McGHEE v. WELLS.

1. EVIDENCE.—Statements made by a husband at time of accepting a deed as to whose money paid for the land, and by his attorney at the time that he could convey to his wife, is competent in an action to set aside the deed to the wife as a fraud upon creditors, to show the character of the husband's possession.

2. IBID.—A party charged with fraud may testify as to the intent with which he did an act in question.

3. IBID.—WITNESS.—Questions as to witness' condition of health is admissible to explain his demeanor on the stand.

4. CHARGE.—Instructions by Judge to jury during examination of a witness, that the question of resulting trust, which on a former trial had erroneously been submitted to them, was not for them, but that question of fraud was, and therein making statements as to the dates of certain documents, afterwards put in issue, was not a charge upon the facts.

5. INADEQUACY of price properly defined not to mean a difference of opinion as to price, but such a gross inadequacy as to startle the minds of the jurors.

6. CHARGE—BADGES OF FRAUD—JURIES AND JURY TRIALS.—Court having stated what were badges of fraud, properly submitted to the jury whether there was evidence to explain them away.

7. AGENCY—EVIDENCE—FRAUD.—There being no evidence as to agency, appellant was not prejudiced by charge and refusals of request as to agency, especially since the theory of appellant that deed was fraudulent, is inconsistent with the idea of agency, as here claimed.

8. SUBSEQUENT PURCHASER.—A purchaser at execution sale upon a judgment obtained after record of deed not recorded in time, based on a debt arising prior to the deed, is not a subsequent purchaser.

9. RECORDING.—ACTUAL NOTICE supplies place of recording.

10. APPEAL—NEW TRIALS.—Where there is no evidence to support a verdict, refusal of new trial is error of law, or where the refusal is based on an erroneous view of the law, but where it is refused although trial Judge differs from the jury on the facts, his action is not reviewable here.

Before GAGE, J., Greenwood, April extra term.  Affirmed.

Action by S. G. McGhee and Jesse Thompson against P. J. Wells.  Plaintiffs appeal.

*Messrs. Graydon* and *Graydon & Giles* and *Parker & Green,* for appellants.  Mr. W. N. Graydon, cites: *As to charge on facts:* 50 S. C., 161; 49 S. C., 481; 33 S. E. R., 353.  *Statement of Wells at time he took the deed inadmissible:* 4 Rich., 422; 9 Rich., 50; 4 McC., 262; 3 McC., 262; 18 S. C., 494; *also intentions of Wells in taking the deed:* Rich. Eq. Ca., 410; 21 S. C., 270.  *As to agency—acts binding principal:* 3 S. C., 1; 14 How., 486; 13 S. C., 5; Carmicheal v. Beech, 10 Rich. L.  *As to estoppel:* 13 S. C., 355.  *As to refusal to grant new trial:* 14 S. C., 428; 32 S. E. R., 509; 54 S. C., 599.  *Unrecorded deed void as to creditors subsequently reducing their claims to judgment:* 23 S. C., 543; 6 Rich., 438.

*Messrs. L. W. Perrin* and *Sheppards & Grier,* contra, cite: *As to alleged charge on facts:* 33 S. E. R., 493.  *Objection below as irrelevant cannot be changed here to incompetency:* 53 S. C., 80.  *Intent of Wells competent to rebut fraud alleged:* Bail. Eq., 139; 29 S. C., 48; 41 S. C., 19; 34 N. Y., 386; 88 N. Y., 422.  *As to inadequate price:* 21 S. C., 270; 19 S. C., 606.  *Whether badges of fraud exist or have been explained is for the jury:* 30 S. E. R., 602.  *As to badges of fraud:* 4 DeS. Eq., 651; 19 S. C., 216; 34 S. E. R., 92.  *As to agency—*(1) *proof of:* 44 S. C., 91; 39 S. C., 535; (2) *scope of authority:* 4 Strob., 427; 1 Hill, 204.  *As to charging inapplicable requests:* 50 S. C., 259; 40 S. C., 234.  *As to new trial:* 12 S. C., 61; 4 S. C., 593; 48 S. C., 266.  *As to subsequent purchasers:* 5 S. E. R., 157.  *Actual notice supplies recording:* 19 S. C., 16.

April 9, 1900.  The opinion of the Court was delivered by

Mr. Justice Jones.  This is the second appeal from judgment and verdict in favor of the defendant—52 S. C., 472.  The action was for the recovery of real property.  The plaintiffs claimed under a sheriff's deed, dated March 21st, 1895, made pursuant to execution sale on judgment entered against J. W. Wells, the defendant's husband, on October 30, 1891.  In support of her claim of title, the defendant introduced a deed to her by said J. W. Wells, dated May 18, 1891, probated June 30th, 1893, and recorded July 1st, 1893. This on its face showed a prior deed from the common source in favor of the defendant.  The plaintiffs, however, attacked this deed on the ground of fraud, and this issue of fraud was the main contention.

Appellants' second, third, fourth, fifth, sixth and seventh exceptions relate to rulings on the admissibility of testimony. The first four exceptions under this class relate to the admission of statements made by J. W. Wells to C. A. C. Waller, at the time of the delivery to him of a deed to the premises by the executors of James A. Bailey, from whom Wells received title to the lot in question.  The sale of the estate lands of James A. Bailey was in September, 1888, but the date of the deed by the executors to J. W. Wells was November 20, 1889.  Defendant having offered testimony tending to show that the lot in question was bought by Wells for his wife and with her money, proposed to prove the declarations of Wells, made when the executor's deed was delivered to him.  The specific question was, "What objection was made to it (the deed) at the time that it was offered?"  Plaintiffs' objection to this question was overruled and the witness answered, "My objection was that I wanted it made to my wife, and Mr. Bailey said that he could not make another, that it would cost him $3, and Mr. Waller advised me just to make title to my wife."  The witness, C. A. C. Waller, was also permitted, over objection, to make a similar statement as to the objection to the deed raised by Mr. Wells.  We do not think the Court erred in permitting the testimony.  The question was whether J.

W. Wells had a fraudulent purpose in conveying the property to his wife, in May, 1891. The evidence tended to show that by accepting the deed in his own name in November, 1889, pursuant to a purchase for his wife in 1888, he deemed himself a trusteee or mere conduit of the property for his wife. It was relevant, therefore, to go to the jury on the question whether he conveyed to his wife merely to carry out the trust, or whether he did so with intent to defraud the plaintiffs. The declaration was made at the time of the delivery of the executor's deed to Wells and his acceptance thereof, and was explanatory thereof, and tended to show the character of his possession at the time of the conveyance to his wife.

The sixth exception complains that J. W. Wells was permitted to answer the question, "What purpose did you have when you executed that deed?" Manifestly there was no error in allowing such a question. Wells' purpose in executing the deed was the very thing the jury were asked to determine. What credence the jury would give to Wells' statement of his purpose was wholly for them.

The seventh exception complains that the Court erred in allowing defendant's counsel to ask J. W. Wells as to his physical condition at the time of the trial. If the matter was irrelevant, it was harmless. But for aught we know, it may have been relevant to explain the manner of the witness on the stand, which counsel may have deemed proper to explain, in order not to be prejudiced thereby. This seems to have been the reason of the Court in permitting this question.

The next class of exceptions we will consider are those relating to the charge of the Judge. The first and nineteenth exceptions impute error in the following remarks of the Judge to the jury during the examination of the witness, C. A. C. Waller: "On the 20th November, 1889, this deed was made to Mr. Wells. Thereafter he got indebted to these parties. In November, 1889, the

deed was made by Bailey to Wells.    After that date Wells
became indebted to McGhee and Thompson, but before their
claims were reduced to judgment, the deed was made to his
wife, and these creditors went ahead and sold the land as if
the land had never been deeded to his wife, and claimed that
it belonged to them; but Mrs. Wells says that the transac-
tion between her husband and herself was a *bona fide* trans-
action, and that is for you, and that is all for you, to consider
and settle; but the question as to the resulting trust is not for
you to consider at all."    It is alleged that these remarks
were a charge on the facts and in violation of the Constitu-
tion, being a statement to the jury that the deed from Wells
to his wife was made before the claims of the plaintiffs were
reduced to judgment; whereas, the contention of the plain-
tiffs was that the deed was made after the judgment, and
dated back for a fraudulent purpose.    Without some expla-
nation, these remarks might be objectionable; but in view of
the circumstances, we do not think they fall under the inhibi-
tion of the Constitution.    These expressions are used during
the examination of Mr. Waller in behalf of the defendant,
and were merely intended to direct the mind of the jury to
the particular issue of fraud, and to exclude them from con-
sidering the matter of resulting trust, which had been errone-
ously submitted to a jury in the former trial.    The remarks
were made in connection with the ruling of the Court as to
the admissibility of the declarations of Mr. Wells to Mr.
Waller when the executor's deed was delivered.    The judg-
ments and the deed had already been introduced in evidence,
and on their face showed that the deed antedated the judg-
ments; and at that stage of the tral no evidence had been
offered to show that the date of the deed to defendant was
different from what the document purported.    Such inci-
dental remarks based upon the relative dates of the docu-
ments before the Court could hardly be deemed a charge to
the jury on the facts.

The eighth exception assigns error in the following charge
to the jury: "What does the law mean by an inadequate

price? It does not mean difference of opinion as to price, but it means such a gross inadequacy that it is such as to startle the mind of this jury, but no other jury or judge, or anybody else." The Court had already charged the request of plaintiffs as follows: "Grossly inadequate consideration does not mean simply less than the actual value of the property. It means a consideration so far short of the real value of property as to shock a correct mind." In the case of *McPherson* v. *McPherson,* 21 S. C., 270, this Court approved as correct a charge as follows: "A consideration about which persons may differ as to whether it is adequate or otherwise, is not such a one as will avoid a deed. The term used is 'grossly inadequate consideration,' &c. It must be a consideration so far short of the value of the property as to arouse a presumption in the mind that the person who takes that property takes it under some kind of secret trust." We cannot see that the charge complained of is materially different from what appellant desired to have charged and did have charged.

The ninth exception alleges error in charging the jury as follows: "The second badge is this, that the husband was then in debt to the plaintiffs, and no charge was to be made, &c. It is for you to say whether it is a badge of fraud or not." It is claimed that this charge improperly left it to the jury to say whether retention of possession by a grantor after sale is a badge of fraud or not; whereas, he should have charged as matter of law that such retention of possession is a badge of fraud. The whole charge of the Judge, however, shows that the exception is not well taken, for he, immediately after the remarks complained of, said: "The third badge is the non-delivery of the deed to the wife and the delay in recording. If you are satisfied that those things are all proved, the law says that those are badges of fraud, and the law says if they are true, that the transaction is a fraudulent transaction unless they have not been proved. If you conclude that these badges do exist, but that they have been explained to your satisfaction, the

jury may then conclude that what looks like a badge of fraud is really no badge of fraud." Then, in his tenth exception, appellant complains of the sentence last above quoted, on the ground that it should not have been left to the jury to say whether or not those badges of fraud had been satisfactorily explained, when there was no evidence to explain them. But it cannot be fairly said that there was no evidence offered to explain those matters, and whether the evidence was sufficient to explain was wholly for the jury.

The eleventh, twelfth, thirteenth and fourteenth exceptions relate to refusals to charge specific requests on the subject of agency, and the general charge of the Court on that subject. The specific requests were as follows: "That if the jury find from the evidence that a settlement was made by J. W. Wells and the plaintiffs, through their attorney, of the matters in dispute between them, whereby it was agreed that the lot in question was to be turned over to the plaintiffs, and that the plaintiffs parted with anything of value in consideration of said agreement, then the defendant is estopped to claim the land in dispute, if the said settlement was made by the said J. W. Wells as the agent of the defendant." "That if the jury find from the evidence that such settlement was made by J. W. Wells as the agent of the defendant, then the said defendant is bound thereby, even though the said J. W. Wells exceeded his authority in making the said settlement, unless the plaintiff had knowledge that he was exceeding his authority." "That if the jury find from the evidence that the defendant authorized J. W. Wells to make a settlement of the matters in dispute with the plaintiffs, then she is bound by the acts and declarations of the said J. W. Wells in making said settlement." The Judge, as to these requests, said he could not charge them in the language used, but would charge on the subject in his own language, which was as follows: "Now about this question of agency, I charge you this: A person may act for himself, or he may act through another. If he act through another, that other is called the agent, and he is

called the principal. The power of the agent may be general or it may be special. It is general when the agent is empowered to do a particular thing or many things in any way necessary or proper to accomplish the end. It is special when the agent is empowered to do a particular thing or many things in a limited way. The jury must determine the character of the agency from the testimony. If general, the principal is bound if the agent exceed his authority, and the other party did not know it. If special, the agent must follow his instructions, else the principal will not be bound." There was testimony to the effect that Wells had a settlement with plaintiffs' attorneys of the said judgment after the sheriff's sale to the plaintiffs of the lot in question, in which settlement Wells got credit on the judgment for plaintiffs' bid at the sale, and that Wells agreed to turn over said lot to the plaintiffs. But beyond the mere act or declaration of Wells, which was objected to, there was no evidence at all that the defendant authorized Wells to so deal with the property. Hence there was no basis in the evidence for a charge as to agency. Indeed, plaintiffs' contention that the deed by Wells to the defendant was void for fraud, is inconsistent with the view of agency, which assumes a valid title in the defendant and that she authorized her agent to convey to plaintiffs. The practical effect of submitting the matter of agency as such to the jury, even if the evidence warranted, would be to submit to them whether plaintiffs were entitled to recover the land upon the ground that defendant ought specifically to perform her contract to convey, made through an agent, or whether she is estopped to assert her title, because of an alleged agreement to convey by her agent. In so far as the evidence of said settlement by J. W. Wells had any tendency to establish the issue of fraud in the deed by Wells to the defendants, it went to the jury under the charge of the Court on that issue. What has been said renders it unnecessary to discuss whether the requests and the charge embodied correct propositions of law as to agency. It is sufficient to say that appellants suffered no injury by said refusal and by said charge.

The twentieth and twenty-first exceptions will next be considered. The first mentioned alleges error in charging the jury as follows: "If a subsequent purchaser has actual notice of the existence of the deed before purchasing, such notice is sufficient though the deed is never recorded." It is contended that the Court ought to have charged that even if the deed was made before the date of the judgments, still, if it was not recorded within forty days from its execution, it was void as to subsequent creditors, and that the plaintiffs were subsequent creditors, if their demands were reduced to judgment before the deed was recorded. The twenty-first exception imputes error in charging that if the deed was made by J. W. Wells to his wife before the date of plaintiffs' judgment and the sale was *bona fide,* the plaintiffs could not recover, the error assigned being substantially the same as pointed out in the twentieth exception. The undisputed evidence was that defendant's deed was recorded before the judgments in favor of plaintiffs were rendered, that actual notice of it was given at the time of the sale, and that the demands of plaintiffs upon which the judgments were based arose prior to the date of defendant's deed. The term "subsequent creditors" means creditors whose debts were contracted subsequent to the deed in question. *King* v. *Fraser, 23* S. C., 543; *Carraway* v. *Carraway, 27* S. C., 576; *Armstrong* v. *Carwile, 56* S. C., 471. It follows, of course, that the entry of judgment subsequent to the deed and its record will not constitute the judgment creditor a subsequent creditor, unless the debt upon which the judgment is based arose subsequent to the deed in question.

The language complained of in the twentieth exception is not objectionable, for there is no doubt that actual notice supplies the place of recording. We do not find that the Court charged in the broad terms alleged in the twenty-first exception, but if it is to be considered only in reference to the rights of plaintiffs as subsequent creditors under the recording act, we find no error in it.

The remaining exceptions relate to the refusal of the mo-

tion for a new trial. It is not error of law for the Circuit Court to refuse a motion for a new trial, even though the Court if trying the facts would have reached a different conclusion on the evidence from the jury. It is no abuse of discretion for a trial Judge to decline to substitute his judgment on the facts for that of the jury; for if it were a rule of law that new trials *must* be granted whenever the Court does not coincide with the jury on the facts, then the granting of new trials for errors of fact would not rest as it does in the sound discretion of the trial Court. Whenever there is *no* evidence to support the verdict, it would be error of law to refuse a new trial, or if the refusal of a new trial is based upon an erroneous view of the law, such refusal is reviewable here; but where there is evidence tending to establish the result of the verdict and the trial Court refuses to disturb the verdict, although differing from the jury on the facts, such refusal is not reviewable here. We have examined the evidence with a view to ascertain if there is absolute want of evidence tending to support the verdict, and we are unable to say that there is such want of evidence.

The judgment of the Circuit Court is affirmed.