638 S.E.2d 81

Nathan **ALBERTSON** and Amanda
Byfield–Albertson, Appellants,

v.

Brian William **ROBINSON** a/k/a Brian W. Robinson,
Maureen Ann Robinson and American General
Financial Services, Inc., Respondents.

No. 4164.

Court of Appeals of South Carolina.

Heard Sept. 12, 2006.

Decided Oct. 16, 2006.

Rehearing Denied Dec. 15, 2006.

---

Robert A. Bernstein, of Charleston, for Appellants.

Christopher David Lizzi, of North Charleston, Maureen Ann Robinson, of Summerville and Thomas H. Brush, of Charleston, for Respondents.

KITTREDGE, J.:

This appeal involves a claim of a fraudulent conveyance pursuant to the Statute of Elizabeth, as codified in section 27–23–10 of the South Carolina Code (Supp.2005). The trial court found the challenged transfer of real property from Brian Robinson to his then wife, Maureen Robinson, was not a fraudulent transfer. The judgment creditors appeal, and we reverse and remand.

## I.

Brian and Maureen Robinson were married on October 4, 1980. The Robinsons experienced difficulties throughout their marriage resulting from Mr. Robinson's abuse of alcohol. These difficulties eventually led to the couples' divorce on February 18, 2005.

The property at issue in this case is the Robinsons' former marital home, which was purchased on September 2, 1985. During their marriage, the Robinsons conveyed an interest in the marital home several times between one another. On June 2, 1992, Mr. Robinson conveyed his interest in the marital residence to Mrs. Robinson. On February 28, 1996, Mrs. Robinson re-conveyed a one-half interest in the marital residence to Mr. Robinson. The reason for the conveyances was Mr. Robinson's alcoholism and Mrs. Robinson's fears that this disease would ultimately harm the family.

The underlying action arises from Mr. Robinson's failure to complete work on a pool he contracted to build for Nathan and Amanda Albertson in August 2000. At the time, Mr. Robinson was the sole proprietor of a business called Southeast Pool Specialties. The contract price for the Albertsons' pool was $16,995, and the Albertsons paid $11,895 as a down payment. Mr. Robinson did not complete the construction of the pool. He attributed his failure to complete the contract to his alcoholism.

In February 2001, the Albertsons filed suit seeking damages for breach of contract. Mr. Robinson did not respond to the lawsuit, but on June 15, 2001, Mrs. Robinson submitted a response to the court in the form of a letter to Mr. Albertson. On September 25, 2001, an entry of default was lodged against Mr. Robinson. As of September 2001, the Robinsons' marital residence was titled jointly in their respective names.

On March 1, 2002, Mr. Robinson conveyed his one-half interest in the marital home to Mrs. Robinson. The stated consideration for this conveyance was $5.00 and "love and affection." The Albertsons contend this conveyance should be found void as a fraudulent transfer because the transfer occurred after Mr. Robinson became indebted to them. In this regard, the Albertsons assert the transfer by Mr. Robinson to Mrs. Robinson of his interest in the property was done with the purpose of avoiding payment of the debt.

On July 22, 2002, the court conducted a damages hearing in the underlying breach of contract action. Mr. Robinson failed to appear for the hearing and judgment was entered against him on August 27, 2002, in the amount of $42,134.

The Robinsons separated on June 16, 2003, and a Separation Agreement was finalized and entered on August 29, 2003. The Robinsons were divorced on February 18, 2005.

The Albertsons filed the present action in 2004. The Albertsons sought a declaratory judgment and relief based on the claim that the March 1, 2002, transfer of Mr. Robinson's interest in the property was void as a fraudulent transfer.

The trial court, following a hearing, denied the Albertsons' Complaint for declaratory relief. The trial court found that Mr. Robinson was not indebted to the Albertsons at the time of the March 1, 2002 transfer; there was no evidence Mr. Robinson failed to retain sufficient assets to pay the resulting judgment; the transfer was supported by adequate consideration; and there was no intent to defraud creditors with the transfer.

## II.

A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue. *Felts v. Richland County,* 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). An action to set aside a transfer as fraudulent pursuant to the Statute of Elizabeth is an action in equity. *Future Group, II v. Nationsbank,* 324 S.C. 89, 97 n. 6, 478 S.E.2d 45, 49 n. 6 (1996). This court therefore has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Pinckney v. Warren,* 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001).

## III.

The Albertsons contend the March 1, 2002 conveyance between Mr. and Mrs. Robinson should be voided as a fraudulent transfer. We agree.

Though the Albertsons raise several arguments on appeal, this case is best dealt with by combining these arguments and examining the law concerning fraudulent transfers as a whole. To do so, we first look to the statutes and case law concerning fraudulent transfers.

The Statute of Elizabeth, as codified in section 27–23–10 of the South Carolina Code (Supp.2005), governs fraudulent conveyances and provides in relevant part:

Every ... conveyance of lands ... which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful ... debts ... must be deemed and taken ... to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

South Carolina courts have held that under the Statute of Elizabeth conveyances may be set aside under two conditions: first, where the transfer is made by the grantor with the actual intent of defrauding his creditors where that intent is imputable to the grantee, even though there is a valuable consideration; and, second, where a transfer is made without actual intent to defraud the grantor's creditors, but without valuable consideration. *McDaniel v. Allen*, 265 S.C. 237, 242–43, 217 S.E.2d 773, 775–76 (1975). We dispose of this appeal pursuant to the latter situation. We therefore do not reach the trial court's finding that Mr. Robinson (in transferring his interest in the property) did not intend to defraud the Albertsons. *Cf. Royal Z Lanes, Inc. v. Collins Holding Corp.*, 337 S.C. 592, 596, 524 S.E.2d 621, 623 (1999) (stating grossly inadequate consideration for a conveyance is a "badge of fraud" and creates a rebuttable presumption of intent to defraud).

We thus begin our examination with a determination of whether the challenged conveyance was supported by valuable consideration. We find the record compels a finding that the transfer in question was not supported by valuable consideration.

The record yields but one reasonable inference—the transfer from Mr. Robinson to Mrs. Robinson was not accompanied by valuable consideration. For example, Mrs. Robinson testified she has no recollection of actually transferring the stated consideration of $5.00. Moreover, the Robinsons' testimony indicates the couple did not have a clear understanding as to what constituted the consideration. Mrs. Robinson stated she gave "all of [her] years being married to him" as consideration

for the property. Mr. Robinson never testified as to what he considered consideration, and instead asserted he was afraid if he did not convey his interest in the property to Mrs. Robinson, the family would lose everything because of his addiction to alcohol. Mr. Robinson stated he "was looking out for [his] kids" and hoped this conveyance would save his marriage.

The Robinsons' additional claim that they conveyed the property pursuant to the separation agreement simply holds no weight. The Robinsons did not separate until over a year after the conveyance, and Mr. Robinson testified he was attempting to avoid a separation in March of 2002. In fact, there was testimony that Mr. Robinson may have still been living at the marital residence at the time the current declaratory action was commenced. We find no consideration was exchanged in the conveyance.

■ The absence of consideration does not end our inquiry. Where a transfer is made without valuable consideration being exchanged, the transfer will be set aside only when the creditor establishes the following: (1) the grantor was indebted to the creditor at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay his indebtedness to the creditor in full, not merely at the time of transfer, but in the final analysis when the creditor seeks to collect the debt. *Mathis v. Burton,* 319 S.C. 261, 265, 460 S.E.2d 406, 408 (Ct.App.1995).

We must, therefore, determine whether the Albertsons were "existing creditors" at the time of the March 1, 2002 conveyance. The case of *Matthews v. Montgomery,* 193 S.C. 118, 133, 7 S.E.2d 841, 848 (1940) is instructive. *Matthews* states that it does not matter whether a creditor obtained the judgment against a property owner before the conveyance:

> It is only necessary that the debt should have been in existence or the right of action have accrued at or before the time of the transfer. It may be reduced to judgment at a later date. To determine whether a person is such an existing creditor as can invoke the protection of the statute the inception of the debt or obligation is the time which

controls; and not the date of the subsequent entry of judgment.

*Id.*

 "The inception of the debt or obligation" arose in 2000 when Mr. Robinson breached his contract with the Albertsons. The challenged conveyance came much later on March 1, 2002, after entry of default in the underlying breach of contract action. Application of *Mathis* and *Matthews* obliges us to find that the Albertsons were existing creditors at the time of the March 1, 2002 conveyance.

The second prong shown in *Mathis,* that the conveyance be voluntary, is not in dispute. The conveyance was voluntary.

 The third and final prong of *Mathis* requires a determination of whether sufficient funds existed to pay the judgment after the conveyance. If the debtor retains sufficient assets to satisfy the debt in full, the challenged conveyance will not be set aside. *See Gardner v. Kirven,* 184 S.C. 37, 42, 191 S.E. 814, 816–17 (1937).

Mr. Robinson's belief that the judgment would be between seven and ten thousand dollars is of no moment; however, he did not even maintain sufficient funds to pay this amount. Mr. Robinson testified he transferred his interest in the house to his wife because he was afraid he was going to lose everything, and it was "the last little bit I had. You know, there wasn't much there." He further testified that when he transferred the house, he did not keep anything other than his clothes. He stated he anticipated there would be a judgment against him, and while he thought he would be able to borrow enough money to pay the judgment, he did not have sufficient funds in the bank. Mr. Robinson apparently sold some tools, but he received around only $7,000 from the sale. Therefore, the evidence establishes that Mr. Robinson failed to retain sufficient assets to satisfy his debt in full to the Albertsons.

## IV.

Accordingly, pursuant to the Statute of Elizabeth, we find the March 1, 2002 conveyance void as fraudulent. We reverse and remand for further proceedings.

**REVERSED and REMANDED.**

ANDERSON and SHORT, JJ., concur.